# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DEBI PACHECO, as parent and next friend of
Linette Pacheco, Renee Pacheco, Milinda Pacheco,
and Flavio Lopez, minors,

        Plaintiffs,

-vs-                                                                                                                                                  No. CIV 97-1546 LH/LFG

MIKE DWYER, SCOTT HARRIS, BOBBY
LONG, and JOHN MALLORY, in their individual
capacities,

        Defendants.

## MEMORANDUM OPINION

**THIS MATTER** comes before the Court on Bobby Long's Motion to Dismiss Third Amended Complaint or in the Alternative for Summary Judgment (Docket No. 94), filed June 21, 1999; Plaintiff Debi Pacheco's Motion to File Fourth Amended Complaint (Docket No. 99), filed August 2, 1999; and Defendants Dwyer's and Harris's Motion for Summary Judgment (Docket No. 108), filed March 3, 2000. The Court, having considered the Motions, the accompanying memoranda, and the applicable law, and otherwise being fully advised, finds that Bobby Long's Motion to Dismiss Third Amended Complaint or in the Alternative for Summary Judgment and Defendants Dwyer's and Harris's Motion for Summary Judgment are well taken and will be **granted** and that Plaintiff Debi Pacheco's Motion to File Fourth Amended Complaint is not well taken and will be **denied**.

**BACKGROUND**

Plaintiff brings suit on behalf of the minor children, asserting that various police officers violated their civil rights while executing a search/arrest warrant at the family trailer home in September 1996. The officers had been investigating Debi Pacheco's husband, Fabian Pacheco, for drug dealing. Fabian Pacheco had previous felony convictions, was believed to be armed, and was awaiting sentencing for a manslaughter conviction, which sentence he apparently is presently serving.

The SWAT team arrived about 6:00 a.m. and after knocking (perhaps) at the front door, one group broke the door and threw a flash-bang grenade into the living room. Another group of officers concurrently broke a window in the master bedroom and threw a flash-bang grenade in there, too.

The alleged problem with this was that the children, ages eight to sixteen, were "home alone." Neither Fabian nor Debi Pacheco were present, although twenty-year-old son Frankie Pacheco, formerly a plaintiff and now a third-party defendant, was. Frankie Pacheco apparently also was under suspicion for assisting his father in dealing drugs. The children were handcuffed by the officers, taken outside, and questioned. Mrs. Pacheco claims that they were unlawfully detained and subjected to use of excessive force in violation of their Fourth Amendment rights.

Plaintiff filed her original Complaint on December 4, 1997, the First Amended Complaint on September 25, 1998, and the Second Amended Complaint on September 29, 1998. Following a hearing on December 21, 1998, the Court dismissed two of the original defendants, federal Agent Darrell Boné and Officer Mark Clayton, on grounds that neither was present when the alleged constitutional violations took place and that there was no clearly established constitutional violation. At that hearing the Court also granted Plaintiff leave to amend to aver that the remaining Defendants

knew the parents were not home at the time they executed the warrant. Plaintiff filed her Third Amended Complaint on January 13, 1999.

In Count I of the Third Amended Complaint, titled Civil Rights Violation–Unlawful Detention in Violation of Fourth Amendment, Plaintiff alleges that Defendants violated the children's constitutional rights not only by their actual detention of the children, but also through the manner in which they effected the detention: failing to knock and announce, using excessive force, and coercive questioning. In Count II, titled Civil Rights Violation–Excessive Use of Force in Violation of Fourth Amendment, she contends that the children's constitutional rights were violated because Defendants threw flash bomb grenades into the house, broke a window, kicked in the front door, pointed loaded guns at the occupants, handcuffed them, and broke furniture.

**BOBBY LONG'S MOTION TO DISMISS THIRD AMENDED COMPLAINT OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

Lt. Long, a New Mexico State Police officer, moves to dismiss for failure to state a claim and, alternatively, for summary judgment on grounds of qualified immunity. He contends that none of the matters pled constitute violation of any clearly established right, arguing that the children had no clearly established right to be free from detention, questioning, a "no knock" entry (if there was one), use of flash bang devices, use of guns and handcuffs, and damage to property incident to execution of the search warrant. Lt. Long also maintains that Plaintiff has not alleged that he personally participated in any violation of the children's rights. He further argues that Plaintiff does not show that his conduct "shocks the conscience."

**I.     Missing Affidavit**

In response to Defendant Long's Motion, Plaintiff first complains that Lt. Long's affidavit was not attached to the Motion when served on her.  Plaintiff's position is completely without merit. Certainly, one reason that the United States District Court for the District of New Mexico instituted the motion packet filing rule, D.N.M.LR-Civ. 7.3(a)(5), was to avoid procedural disputes such as this.  All Plaintiff's counsel had to do was inquire of Defendant Long's counsel about the affidavit, rather than later trying to use this omission as a basis for objecting to the Motion.  Defendant Long's counsel points out in his reply memorandum that when he received Plaintiff's Response he forwarded the affidavit and offered additional time for Plaintiff to redraft the response.  Plaintiff's counsel never responded to his suggestion.

**II.    Discovery**

Plaintiff asserts that she is unable to present essential facts in opposition to Defendant Long's Motion because no discovery has been allowed in this case.  She then lists the factual disputes she "reasonably anticipate[s] that discovery will reveal."  (Pl. Debi Pacheco's Resp. Opp'n Def. Long's Mot. Dismiss at 3.)

This issue also is totally without merit.  Due to service on Plaintiff of a motion to dismiss based on qualified immunity, Magistrate Judge Garcia most recently stayed discovery in this case on April 6, 1999.  (Order Granting Temporary Stay of Discovery and Establishing Time Limits for Submission of Fed. R. Civ. P. 56(f) Affidavit.)  In his Order, however, Judge Garcia explicitly stated that limited discovery could be allowed, pursuant to *Lewis v. City of Fort Collins*, 903 F.2d 752 (10th Cir. 1990), if within fifteen days from receipt of Defendant Long's Rule 26 disclosures, Plaintiff filed "an appropriate Rule 56(f) affidavit disclosing what discovery is needed on the issue of qualified

immunity, and, specifically, how that discovery will assist Plaintiff in rebutting defendant's *prima facie* showing." (*Id.* at 2.) Judge Garcia further provided guidance on the proper construction of such an affidavit, quoting from an opinion of the Honorable James A. Parker, United States District Judge for the District of New Mexico. (*Id.*) Finally, Judge Garcia stated that upon review of Plaintiff's Rule 56 affidavit, he would establish time frames for any allowed discovery and, whether granted or not, set an appropriate time frame for Plaintiff's response to Defendant Long's Motion. (*Id.* at 3.)

Plaintiff completely ignored Judge Garcia's Order. Therefore, her argument regarding insufficient discovery will not preclude the Court from addressing Lt. Long's Motion as one for summary judgment.

### III. Sufficiency of the Third Amended Complaint as to Lt. Long

The Third Amended Complaint does not meet the heightened pleading standard required by the Tenth Circuit in the context of a qualified immunity defense brought by government officials. *Breidenbach v. Bolish*, 126 F.3d 1288, 1292 & n.2 (1997)(distinguishing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993)(heightened pleading standard not applicable to § 1983 actions alleging municipal liability)). Under this standard, a plaintiff must

> do more than assert bare allegations of a constitutional violation[:] the complaint must include all the factual allegations necessary to sustain a conclusion that defendant violated clearly established law[; and i]f the original complaint is deficient, the plaintiff must amend . . . to include specific, non-conclusory allegations of fact sufficient to allow the district court to determine that those facts, if proved, demonstrate that the actions taken were not objectively reasonable in light of the clearly established law.

*Id.* at 1293 (internal quotations and citations omitted). A government official will not be subject to discovery based on a complaint that is supported only by conclusory allegations and speculation of a constitutional violation. *Id.* Rather, "plaintiffs should pursue every possible avenue to obtain the necessary facts to support their legal claims prior to filing a complaint." *Id.* at 1294.

Lt. Long correctly notes that all acts alleged in the Third Amended Complaint are indiscriminately asserted against each and every Defendant and "other Task Force members," none against him personally. Whether such practice is sufficient to meet the heightened pleading requirement is questionable, as it makes it impossible to assess the conduct of each individual-- blanket assertions of participation by all defendants in all acts, even when such participation is impossible or highly unlikely and apparently not generally supported by fact, unfairly restrict both Defendant and the Court. As the court stated in *Sawyer v. County of Creek*, "[a] federal lawsuit is not a fishing expedition." 908 F.2d 663, 668 (10th Cir. 1990); *see also Breidenbach*, 126 F.3d at 1294 ("In a case such as this [claiming knowingly including false information in affidavit supporting search warrant application, which affidavit was sealed by issuing judge], the plaintiffs should pursue every possible avenue to obtain the necessary facts to support their legal claims prior to filing a complaint."). Plaintiff here, even after filing suit and prosecuting it for over two years has failed even to attempt to pursue the discovery that has been available to her.

Lt. Long relies on *Jenkins v. Wood*, 81 F.3d 988 (10th Cir. 1996), for the proposition that Plaintiff must show that he actually participated in the alleged constitutional violations. In *Mick v. Brewer*, however, the court stated that "Tenth Circuit precedent clearly established before June 18, 1992 that a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983." 76 F.3d 1127, 1136 (10th Cir. 1996).

Although Lt. Long may have been the highest ranking officer present, as Plaintiff contends, this fact is not relevant regarding his potential culpability, as the Pacheco investigation and execution of the search warrant were a Region I Narcotics Task Force operation, not that of the New Mexico State Police. That he might have witnessed violations by other officers, however, is relevant--but only if any constitutional violations in fact were committed.

In any case, Lt. Long himself has asserted certain facts in his affidavit regarding his personal conduct in this matter, thus moving the Court's focus beyond the Third Amended Complaint. At the time of the execution of the search warrant on the Pacheco home, Defendant was Commander of the New Mexico State Police Special Weapons and Tactics Team (NM SWAT). (Long Aff. ¶ 4.) He and several other NM SWAT members assisted the Albuquerque Police Department Swat Team in executing the search warrant for the Region I Narcotics Task Force. (*Id.* ¶ 9.) He states that "[i]t was assumed that Fabian Pacheco may be present, armed, dangerous and violent and I am not aware of any information to the contrary." (*Id.* ¶ 11.)

Long was present and participated in the execution of the warrant. He was a member of the initial entry team and avers that:

> [o]nce in my position at the front door, I tried the door knob and it was locked. I then banged loudly on the door with my fist and hollered "Police! Search Warrant! Open the Door!" I could hear noise and movement inside, but nobody opened the door or voiced compliance.

(*Id.* ¶ 14.) Lt. Long then used a sledge hammer to hit a pick-like device held by another officer in the door frame. (*Id.*) After several swings, the door opened and he stood aside to let other team members enter. (*Id.* ¶ 15.) He followed, but asserts:

> I did not interact with, physically touch, handcuff, point a weapon at or question any occupants of the residence. I did not conduct any search of the premises. I waited

outside for the arrival of other officers. Within about fifteen minutes of entry all of
the Swat Team was back in the van and had cleared the scene.

(*Id.* ¶ 16.) As these facts now are before the Court, Lt. Long will not be dismissed solely on the basis of Plaintiff's failure to meet the heightened pleading standard.

## IV. QUALIFIED IMMUNITY

The doctrine of qualified immunity protects government officials from individual liability under 42 U.S.C. § 1983 for actions taken while performing discretionary functions, unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When raised in a motion for summary judgment, this defense requires the plaintiff to meet a two-part test: "First, the plaintiff must show the defendant's conduct violated a constitutional or statutory right; second, the plaintiff must show the right the defendant's conduct violated was clearly established such that a reasonable person in the defendant's position would have known the conduct violated the right." *Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584, 593 (10th Cir. 1999)(quoting *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997)). The Court's first task, then, is "to determine whether the plaintiff has alleged any constitutional or statutory violation." *Jurasek v. Utah State Hosp.*, 158 F.3d 506, 516 (10th Cir. 1998)(citing *County of Sacramento v. Lewis*, 523 U.S. 833, ___ n.5, 118 S. Ct. 1708, 1714 n.5 (1998).)

### A. Legal Analysis

Lt. Long incorrectly contends that the "shocks the conscience" standard of *County of Sacramento*, applies to this case. As Plaintiff clearly alleges Fourth Amendment claims, *County of Sacramento's* substantive due process analysis is not applicable here. *See County of Sacramento*, 523

U.S. at ___, 118 S. Ct. at 1714 ("[w]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims" (citation and internal quotation marks omitted)).

A Section 1983 claim of use of excessive force during a seizure is analyzed by determining "whether the officers' actions were objectively reasonable in light of the surrounding facts and circumstances," *Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997)(citing *Graham*, 490 U.S. at 397; *Thompson v. City of Lawrence*, 58 F.3d 1511, 1516 (10th Cir. 1995)). The inquiry, then, requires the Court to examine "whether the totality of the circumstances justified a particular sort of . . . seizure," giving consideration to factors such as the severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officers or others, and whether the subject is resisting arrest or attempting to avoid arrest. *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985).

### B. Unlawful Detention (Count I)

Although Plaintiff conceded earlier in these proceedings that the Defendants "were permitted to detain [the children] during the execution of the search warrant under *Michigan v. Summers*, 452 U.S. 692 (1981), and its progeny," (Pl.'s Resp. in Partial Opp'n to Boné's Mot. Dismiss at 10), she seems to persist in this claim here, in addition to maintaining that the "manner" in which the children were detained violated their Fourth Amendment rights. As set forth in Count I, this includes failing to knock and announce, using excessive force, and coercive questioning.

#### 1. Failure to Knock and Announce/Use of Excessive Force

Any claim of unlawful detention appears unsupportable if Defendants rightfully detained the children pursuant to execution of the warrant, which they did. *See Summers*, 452 U.S. at 705 (for

fourth amendment purposes, warrant to search for contraband founded on probable cause implicitly carries with it limited authority to detain occupants at the premises while proper search is conducted). Plaintiff has never questioned the validity of the underlying warrant. What the alleged failure to knock and announce or use of excessive force in entering the premises have to do with the constitutionality of the subsequent detention is not clear. What Plaintiff appears to actually focus on is the purported questioning of the children once they were removed from the home.

Regardless, the evidence before the Court clearly shows that Lt. Long did knock and announce prior to Defendants' forced entry into the home. He affirms that "[I] banged loudly on the door with my fist and hollered 'Police! Search Warrant! Open the Door!' I could hear noise and movement inside, but nobody opened the door or voiced compliance." (Long Aff. ¶ 14.) Additionally, his report and those of other officers, written shortly after the incident, state that the police did knock first. (*See* Pl.'s Resp. Ex. 3, Long Report ("I checked the front door knob and it was locked. After knocking and anouncement [sic] of 'Police. Search Warrant' no one came to the door."); Ex. 5, White Report ("I was on the entry team. We did a knock and announce at the front door."); Ex. 6, DeFrates Report ("After announcements were made . . .").)

The only evidence Plaintiff offers in this regard is the statement of Milinda Pacheco: "At no time did I hear anyone just knock at the door and say who they were, or that they were the police." (*Id.* Ex. 2, Milinda Pacheco Aff. at 1.) It is undisputed, however, that prior to execution of the warrant, Milinda was asleep in a bedroom, not in the living room where the knock and announce took place at the front door. (*Id.* ("My sisters and I were in the bedroom."); Third Am. Compl. ¶ 6 ("One grenade was thrown through a window into the master bedroom, where Linette, Renee, and Milinda Pacheco were sleeping.").) Thus, that Milinda may not have heard the "knock and announce," does

not create a genuine issue of material fact as to whether it actually occurred. Also, Flavio Lopez, another of the children on whose behalf Plaintiff brings this suit, and Frankie Pacheco were in the living room. Plaintiff has not offered statements from either regarding this issue.

The other incidents of alleged use of excessive force are discussed below under the excessive force claim in Count II.

### 2. Coercive Questioning

The Court must admit to still being perplexed as to the both the factual and constitutional basis for this claim. The only references to any questioning are: 1) "Defendants and other Task Force members handcuffed all of the Plaintiffs, held them at gunpoint, removed them from their home, and *questioned them*," (Third Am. Compl. at ¶ 7 (emphasis added)), and 2) "Defendants' actions in detaining Plaintiffs, and the manner in which Defendants effected the detention, including but not limited to Defendants' failure to knock and announce, use of excessive force, and *coercive questioning of Plaintiffs*, were objectively unreasonable, and intentional, willful, wanton, obdurate, and in gross and reckless disregard of Plaintiffs' rights," (*Id.* ¶ 11 (emphasis added).)

The only addition that Plaintiff has made to these conclusory allegations in more than two years of litigation is the statement of Milinda Pacheco: "Then, many police officers came into our home. They pointed guns at us, handcuffed us, and *took us outside to ask us questions*." (Pl.'s Resp. Ex. 2 ¶ 5 (emphasis added).) It is not at all evident how this could constitute a constitutional violation under the Fourth Amendment. What is clear is that whether a constitutional claim can be stated depends upon the content of the questions. For example, would asking the children their names in these circumstances violate the constitution? The answer must be a resounding "NO!"

Neither party provides the Court a civil rights case supporting their discussions of this issue. Plaintiff relies on a criminal case, *United States v. Laboy*, which discusses whether an encounter where an undercover police officer waved his hand at a suspect, signaling him to come across the street, constituted a seizure for Fourth Amendment purposes, thereby requiring suppression of evidence seized during the resulting arrest and pursuant to a subsequent warrant. 979 F.2d 795 (10th Cir. 1992). The suspect crossed the street and told the officer he had drugs for sale. The issue of coercive questioning, then, rested on whether there was a seizure. The court found no seizure and, therefore, determined the questioning was consensual. This case does not seem at all relevant to this matter. There is no question here that the children were temporarily detained by the officers, which seizure, however, was constitutional. *See Summers*, 452 U.S. 692.

It is true that coercive questioning may rise to the level of constitutional violation, depending upon the questions asked and answers given. One possibility is through a coerced confession, which breaches a person's right to remain silent under the Fifth Amendment. While § 1983 actions can be brought in such circumstances, nothing of that sort is alleged here. More than three years after this questioning, we still do not know the content of even one of the questions that may have been asked. This claim will be dismissed.

### C. Use of Excessive Force (Count II)

Lt. Long maintains that the tactics employed in executing the warrant were reasonable given the facts known to the officers at the time: that Fabian Pacheco was a violent convicted felon, believed to be in possession of firearms; that he and Frankie were engaged in the distribution of narcotics from the residence; and that they might violently resist execution of the warrant. He argues that the detention, questioning, a "no knock" entry (if there was one), use of flash bang devices, use

of guns and handcuffs, and damage to property incident to execution of the search warrant did not violate the children's constitutional rights.

### 1. No-Knock Entry

As discussed above, the evidence establishes that the police did "knock and announce."

### 2. Flash-Bang Devices

Plaintiff takes the position that this use of force was unreasonable because the police knew that Fabian Pacheco would not be home at the time the search warrant would be executed. This assertion was nowhere to be found in the original Complaint, but apparently is based on Officer Mark Clayton's statement in his original Counterclaim and Third Party Complaint hat "[b]ecause the search warrant was obtained late on a Friday afternoon and because Mark Clayton overheard Fabian Pacheco say that he was leaving to visit relatives, execution of the search warrant was delayed and planned for the following Monday morning." (Answer of Officer Mark Clayton at ¶ L.) Plaintiff's Third Amended Complaint alleges that "Defendants knew that Plaintiffs' parents were out of town." (¶ 5.)

Plaintiff attempts to read too much into Officer Clayton's assertion. It does not establish that the authorities knew Fabian would not be present. Rather, as Agent Boné earlier contended with regard to his Motion to Dismiss Pursuant to Fed. R. Civ. 12(b) or, in the Alternative, Motion for Summary Judgment, a more reasonable reading is that it indicates an attempt to assure Mr. Pacheco was present by delaying execution of the warrant. If Defendants' intent had been to execute the warrant when the parents were not present, surely they would have proceeded, as originally planned, on Saturday morning.

Regardless, Lt. Long states unequivocally that "[i]t was assumed that Fabian Pacheco may be present, armed, dangerous and violent and I am not aware of any information to the contrary." (Long Aff. ¶ 11.) Plaintiff offers no evidence beyond the conclusory allegation in the Third Amended Complaint to counter Lt. Long's assertion that he expected Fabian Pacheco to be in the house when he helped execute the warrant.

Additionally, as Defendant also argues, the use of flash-bang grenades has not been held by either the Supreme Court or the Tenth Circuit Court of Appeals to be *per se* unconstitutional. Plaintiff relies on *United States v. Myers*, in which the court noted that

> [t]he use of a "flashbang" device in a house where innocent and unsuspecting children sleep gives us great pause. Certainly, we could not countenance the use of such a device as a routine matter. . . . Although it might seem that the [Kansas Bureau of Investigation]'s actions in this case come dangerously close to a Fourth Amendment violation, we cannot say that their actions were objectively unreasonable [in light of defendant's lengthy pattern of criminal activity, including illegal drug trafficking and fire bombing].

106 F.3d 936, 940 (10th Cir. 1997). While *Myers* might indicate a violation in an instance where the target was known not to be present, such is not the case here. Neither has it been shown, or even alleged, that Defendants routinely used flash-bang devices. Additionally, extrapolation from the *dicta* in *Myer's* cannot show clearly established law. Lt. Long's Motion for Summary Judgment will be granted on this issue.

### 3. Pointed Guns, Handcuffing, Property Damage

These claims will be dismissed on grounds of qualified immunity because Plaintiff fails to allege facts that rise to the level of a constitutional violation. As with the flash-bang devices and forced entry, neither the allegations in the Third Amended Complaint, nor any other factual assertions, are sufficient to support a determination that the Defendants acted unreasonably under the

circumstances. Plaintiff's argument seems to be that because children were involved, the use of flash-bang devices, no-knock entry, pointing of guns, handcuffing, questioning, and property damage are *per se* unconstitutional. Such is not the case. Given that Lt. Long believed Fabian Pacheco to be present and armed, one could say that it would have been unreasonable for him or the other officers to have entered the home without their weapons drawn. Likewise, if use of the flash bang devices was reasonable, the small amount of damage they caused would also be reasonable, as would be any damage to the front door on making entry and to a table in the living room while securing and handcuffing Frankie Pacheco. In any case, the children do not have standing to pursue a claim of property damage.

Regarding handcuffing, the Second Circuit found it "*prudent*" to handcuff an occupant, until officers "could be certain that the situation was safe." *United States v. Fullwood*, 86 F.3d 27, 30 (1996)(emphasis added). There is no reason to find differently in this matter. With regard to children, the handcuffing in a basement of a twelve-year-old girl and fifteen-year-old boy in his underwear for approximately forty-five minutes has been found reasonable, even assuming the boy was briefly handcuffed to a pole. *Stewart v. United States*, No. 95-6024, 1996 WL 387219, *2-3 (2d Cir. 1996).

## VI.   Conclusion

Lt. Long's actions in this matter were objectively reasonable under circumstances and his Motion for Summary Judgment on grounds of qualified immunity will be granted.

**MOTION FOR SUMMARY JUDGMENT**

Lt. Mike Dwyer and Officer Scott Harris move for summary judgment on grounds that they did not participate in any alleged unconstitutional or illegal use of force or detention against the

children. Both assert that they were a half mile away from the property when the SWAT team gained entrance and secured the premises and that they only searched the property after the fact. Thus, they claim that they played no part in any use of excessive or illegal force and have no knowledge whether the SWAT team may have done so. Each Defendant submits his affidavit in support of the Motion. (*See* Brief Supp., Harris Aff., Dwyer Aff.) Plaintiff challenges Officer Harris's affidavit on grounds that it is not notarized. Affidavits have not needed to be notarized, however, since 1976. 10B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2738, at 362-63 (3d ed. 1998).

In her Response Plaintiff first complains that she cannot present all facts essential to justify her opposition to the Motion because no discovery has been allowed in this case. This argument is as unavailing here as it was in response to Lt. Long's Motion. (*See supra* pp. 4-5.)

Plaintiff also requests leave to supplement her Response with transcripts from taped interviews of Officer Harris and Lt. Dwyer taken on January 27, 2000. Due to "technical problems," Plaintiff apparently has been unable to transcribe the tape recordings. The Court notes that this "request," made in a footnote to her Response, (Pl.'s Resp. Opp'n at 3 n.2), provides no further explanation or estimate of when the "technical problems" might be resolved. Additionally, under the Local Rules, Plaintiff could have asked Defendants for an extension of time in which to respond, in order to remedy the transcription problem, but apparently failed to do so. (*See* D.N.M.LR-Civ.7.3(a)(3); Reply Supp. Mot. Summ. J. at 4.) Plaintiff had almost one month in which to transcribe the sworn testimony before serving her Response and has failed to notify the Court in the additional month-and-a- half since passed that she has rectified the problem and has supplemental

material for her Response. The Court finds Plaintiff's position is without merit and does not justify delay in ruling on Defendants Harris's and Dwyer's Motion.

Although Plaintiff attempts to challenge these Defendants' statement of undisputed material facts, her efforts are futile, given the Court's determination with regard to Lt. Long's Motion that she has not and cannot show that any Defendants' conduct violated a constitutional or statutory right. Therefore, she cannot prevail in her claims of coercive questioning and use of excessive force. Officer Harris's and Lt. Dwyer's Motion for Summary Judgment will be granted.

**PLAINTIFF DEBI PACHECO'S MOTION TO FILE FOURTH AMENDED COMPLAINT**

Plaintiff seeks to name additional defendants, whose identities apparently were disclosed to her only recently. Defendant Long opposes the Motion, contending that the Court first should rule on his Motion and deny amendment unless Plaintiff can show that she can plead that some defendant violated a clearly established constitutional right of a plaintiff.

The Court agrees with Lt. Long's argument and will deny Plaintiff's Motion. As Plaintiff acknowledges, the complaint she seeks to file is substantially similar to the Third Amended Complaint in that she seeks only to add other law enforcement officers as defendants.. (Pl. Debi Pacheco's Reply Supp Mot. File Fourth Am. Compl. at 2.) She further admits that although Lt. Long's Motion and her response thereto are factually specific to Lt. Long, "the legal analyses therein also pertain to the claims Plaintiff now seeks to assert against additional Defendants." (*Id.* at 2 n.2.) As the Court has determined that Plaintiff has not stated a constitutional claim against any of the Defendants named to date, it would be futile to allow her to amend to add new defendants. Plaintiff's Motion to File Fourth Amended Complaint will be denied.

An Order in accordance with this Memorandum Opinion shall be entered contemporaneously.

_____
**UNITED STATES DISTRICT JUDGE**